❏ Original  ❏ Duplicate



CLERK'S OFFICE
A TRUE COPY
Jan 29, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. **25-M-327 (SCD)**
A black Apple iPhone ("The Device"), currently in )
law enforcement custody, as further described in )
Attachment A )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 2-12-25 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Stephen Dries _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)* ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ 1-29-25. 11:30 am _____ _____
*Judge's signature*

City and state: _____ Milwaukee, WI _____ _____ Honorable Stephen Dries, U.S. Magistrate Judge _____
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

The property to be searched is black Apple iPhone in a black rubber case, phone number of 414-307-0393, hereinafter "the **Device**," which is currently located at North Central High Intensity Drug Trafficking Area, 11548 West Theodore Tracker Way, West Allis, Wisconsin, 53214.

This warrant authorizes the forensic examination of the **Device** for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.     All records on **the Device** described in Attachment A that relate to violations of Title 21, United States Code, sections 841(a)(1) and 843(b) and Title 18, United States Code, section 922(g) and involve Jeffrey LOVE, since January 1, 2024, including, but not limited to:

    a.  preparatory steps taken in furtherance of these crimes;

    b.  lists of drug customers and related identifying information;

    c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d.  any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    e.  any information recording schedule or travel;

    f.  all bank records, checks, credit card bills, account information, and other financial records;

    g.  Photographs and/or video depicting possession of drugs, firearms, assets, or other activities related to drug trafficking or money laundering;

    h.  Any evidence related to either the ownership, purchase, or possession of drugs, firearms, and assets;

    i.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    j.  All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of **the Device**;

2.      Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Jan 29, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) Case No. 25-M-327 (SCD) |
| A black Apple iPhone ("The Device"), currently in law enforcement custody, as further described in Attachment A | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b) and 18 USC §§ 922(g) | Distribution of a controlled substance, Unlawful use of a communication facility, and Possession of a firearm by a felon |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

(Affiliate)

Robert Gregory
Digitally signed by Robert Gregory
Date: 2025.01.28 13:17:02 -06'00'

*Applicant's signature*

Robert Gregory, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: __1-29-25__

*Judge's signature*

City and state: __Milwaukee, WI__        Honorable Stephen Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## UNDER RULE 41 FOR A SEARCH WARRANT

I, Robert Gregory, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. I am currently investigating Jeffrey LOVE for violations of Title 21, United States Code, sections 841(a)(1) and 843(b) and Title 18, United States Code, section 922(g).

2.     I am a state certified law enforcement officer employed as a Police Officer with the Milwaukee Police Department and have been a sworn officer in the State of Wisconsin for over ten years. I am currently assigned to the North Central High Intensity Drug Trafficking Area Interdiction Task Force. I am also federally deputized Task Force Officer with the United States Department of Justice, Drug Enforcement Administration for this investigation. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.     My responsibilities as a case specific TFO include the investigation of violent crimes, criminal enterprises, violations relating to the illegal sale and transfer of narcotics and firearms, and violent criminal acts in furtherance of criminal enterprises.

4. During my law enforcement career, I have participated in numerous narcotics and illegal possession of firearm investigations and have authored numerous affidavits supporting criminal complaints and search and seizure warrants.

5. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

6. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

7. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

8. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9. The property to be searched is a black Apple IPHONE in a black rubber case and having phone number of 414-307-0393, hereinafter "**The Device**," which is currently located at North Central High Intensity Drug Trafficking Area, 11548 West Theodore Trecker Way, West Allis, Wisconsin, 53214.

10. The applied-for warrant would authorize the forensic examination of the **Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## INVESTIGATION AND PROBABLE CAUSE

11. On Monday, January 27, 2025, the following Law Enforcement officers were involved in a surveillance operation of Jeffrey A. LOVE (black male 09/21/1966): Homeland Security Investigations (HSI) TFO Joseph Esqueda, United States Postal Inspector Service (USPIS) Inspector Tyler Fink, USPIS TFO Christopher Conway, and Affiant. Prior to this surveillance operation, based upon information derived from a Human Source of Information (SOI), LOVE was identified as an individual suspected of trafficking controlled substances.

## SOURCE OF INFORMATION

12. In the first week of November 2024, TFO Esqueda and Affiant met with a SOI. The purpose of this meeting was to discuss the SOI's knowledge of a cocaine trafficker operating in the City and County of Milwaukee, Wisconsin.

13.    That SOI identified a cocaine trafficker by the name "Jeffrey Love;" that SOI stated he/she has known LOVE for approximately ten (10) years; that SOI stated he/she learned Jeffrey Love sold cocaine in 2023 when LOVE gave SOI a quantity of cocaine to sell; That SOI described the amount of cocaine to TFO Esqueda and Affiant, who believed it to be in fact cocaine and consistent with mid-level drug dealing; that SOI stated he/she then started to sell cocaine on behalf of LOVE; that SOI stated since then, he/she has middled approximately fifteen (15) ounce level cocaine transactions between LOVE and multiple street-level drug dealers; that SOI explained a typical cocaine transaction would occur in the following manner: SOI would contact LOVE at phone number 414-307-0393 and advise LOVE of the  street-level drug dealer's cocaine order (typically an ounce of cocaine); that SOI would retrieve the money from the customer and would meet LOVE at a particular location on the north-side of Milwaukee; that at this meet location, SOI would exchange the money with LOVE, who would then turnover the agreed-upon amount of cocaine, and SOI would then return to the customer and deliver the cocaine;

14.    That SOI showed the TFO Esqueda and Affiant the Facebook Profile "Jeffrey Love" and identified the person in the profile photo as LOVE. That Affiant showed SOI a Milwaukee Police Department booking photograph of LOVE and the SOI positively identified LOVE as an individual trafficking cocaine in the Milwaukee area;

15.    Beginning in November of 2024, SOI made statements against SOI's penal interest. SOI is cooperating in exchange for consideration on a felony fraud investigation that has not been charged or issued. Thus far, the information provided by SOI has been corroborated by information known to case agents, as well as other law enforcement

officials, gathered during the investigation. More specifically, SOI's information has been corroborated by an arrest of a wanted individual in which illegal contraband was recovered. The SOI has three felony convictions, two of which are for controlled substance trafficking and the other being for illegal possession of a firearm. SOI further has two misdemeanor convictions. Within the context of the information detailed and relied upon for purposes of this Affidavit, case agents believe SOI is credible and SOI's information reliable;

16.     A check of NCIC revealed that LOVE is currently being supervised by the Wisconsin Department of Corrections (WI DOC) regarding the following felony convictions: 2015CF000294 (Armed robbery with the threat of force and vehicle operator fleeing and eluding) and 2022CF000601 (Felon in possession of a firearm). In November of 2024, Affiant is aware that LOVE updated his home address with the WI DOC to be 5396 North Long Island Drive, Lower Unit (Target Residence), Milwaukee, Wisconsin, 53225.

**SURVEILLANCE OPERATION**

17.     Through investigation and prior surveillance operations, case agents know that LOVE operates a black Chevrolet Suburban (Target Vehicle) bearing Wisconsin registration plates of ALD-2561. LOVE is the registered owner of the Target Vehicle. On 01/27/2025, at approximately 10:30AM, case agents observed LOVE operating the Target Vehicle East bound in the 5000-block of West Burleigh Street. Case agents observed the Target Vehicle arrive in the 3300-block of West Burleigh Street. The Target Vehicle then began to make U-Turns and drive around the block. Inspector Fink and TFO Conway

observed the Target Vehicle park on the West side of North 33rd Street just North of West Burleigh Street. Inspector Fink and TFO Conway observed an unidentified male subject walk across West Burleigh Street towards the Target Vehicle. The unidentified male entered the Target Vehicle through the front passenger door. The unidentified male exited the Target Vehicle approximately two minutes later and entered a house on the South side of West Burleigh Street. Case agents believe that LOVE and the unidentified male consummated a drug deal within the Target Vehicle.

18.    The case agents mentioned in this affidavit have vast experience in conducting undercover surveillance relating to controlled substance trafficking, namely, mobile controlled substance trafficking. Mobile controlled substance trafficking is where a trafficker will drive to a location agreed upon by the trafficker and buyer. The buyer will then meet with the trafficker to obtain the controlled substances in exchange for United States Currency (USC). The interaction will be short in time and each party will leave the area. Traffickers utilize mobile controlled substance trafficking as they are able to sell high amounts of controlled substances in a short amount of time as they area mobile and able to meet their buyers in different parts of the city. Mobile controlled substance trafficking also makes it more difficult for Law Enforcement to identify the trafficker and their whereabouts.

19.    Case agents then followed LOVE to the Target Residence. LOVE parked the Target Vehicle in front of the Target Residence on the street. Case agents observed LOVE enter the front door of the residence utilizing keys. LOVE was observed to be wearing a black winter jacket and blue sweatpants.

20.     At approximately 11:37AM, case agents observed a green Toyota Corolla arrive at the Target Residence. An unidentified male exited the Corolla and knocked on the door to the Target Residence. The unidentified male did not receive an answer at the door and returned to his vehicle. Case agents were able to observe the male retrieve his cell phone and appeared to call someone. Moments later, the male exited the Corolla and was then let into the Target Residence through the front door. Approximately 30 seconds later, the male exited the residence and re-entered the Corolla. The male then drove away from the Target Residence.

21.     At approximately 11:55AM, case agents observed a gold Toyota Highlander arrive and park in front of the Target Residence. Case agents observed an unidentified male exit the Highlander and knock at the front door of the Target Residence. The unidentified male then was let into the residence. Approximately 20 minutes later, case agents observed the unidentified male exit the residence holding a bag that appeared to be heavy based on its appearance and how the subject was holding it. The unidentified male opened the rear door on the driver side of the Highlander and appeared to hide the bag in the rear compartment of the vehicle. Case agents believed the male was hiding the bag based on how far he placed his body in the vehicle and how long it took him to exit the vehicle.

22.     At approximately 1:40pm, case agents observed an unidentified male arrive at the Target Residence on foot. The male knocked on the door to the Target Residence and was let approximately two to three minutes later. Approximately two minute later, the unidentified male exited the residence and left the area on foot.

23.     Based on case agents' experience in conducting surveillance relating to controlled substance trafficking investigations, case agents believe the observations described in paragraphs 20-22 to be suspected controlled substance transactions. Case agents know that traffickers will also utilize their residence to traffic controlled substances. Buyers will arrive at the trafficker's residence and obtain the controlled substances either outside or inside of the residence. The subjects will then leave shortly after the transactions.

24.     Affiant believes the actions described in paragraphs 17-22 are important as they corroborate the information SOI gave TFO Esqueda and Affiant regarding LOVE's criminal activity.

## ARREST OF LOVE AND ACT 79 SEARCH OF THE TARGET RESIDENCE

25.     On 01/27/2025, Affiant knows that an apprehension request was issued by WI DOC for LOVE as he was believed to be violating the terms and conditions of his supervision. At approximately 1:50PM, members of the Untied States Marshals Service Fugitive Task Force (USMS FTF) arrived at the Target Residence. Members of the USMS FTF knocked on the front door of the Target Residence and announced themselves as Law Enforcement. After a reasonable amount of time for someone to answer the door, the members of the USMS FTF breached the front door and entered the Target Residence. The USMS FTF continued to announce themselves and found two doors additional doors that lead to the Target Residence. The USMS FTF attempted to breach the first door, but this was a failed breach as a couch was barricading the door. The USMS FTF then moved to the second door and breached this door to enter the Target Residence. The USMS FTF

observed LOVE exiting the living room and coming into the kitchen. LOVE was later taken into custody. Also located in the residence was an adult female along with two juvenile children.

26.    The USMS FTF moved throughout the rest of the residence to search for lurking confederates. No other subjects were located in the residence. Located in plain view in the North West bedroom was a black digital scale that was on a dresser along the North wall. Affiant knows that digital scales are common instruments in controlled substance trafficking. Affiant further knows that suspected cocaine residue was found on the scale plate. Also located in the room were numerous pill bottles prescribed to LOVE.

27.    Pursuant to 2013 Wisconsin Act 79, LOVE's residence was subject to search. 2013 Wisconsin Act 79 reads: "The Act specifies that a law enforcement officer may require certain persons under field supervision to submit to a search of the person, the person's residence, or of any property under the person's control, if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of the field supervision. The persons that a law enforcement officer may require to submit to a search is limited to persons under field supervision for a felony conviction and persons placed on probation for any violation of chs. 940, 948, and 961, Stats. (These chapters concern crimes against life and bodily security, crimes against children, and the Uniform Controlled Substances Act.) Under the Act, a search conducted under this authority must be conducted in a reasonable manner, and cannot be arbitrary, capricious, or harassing. The Act also provides that a law enforcement officer who has conducted such a search must notify DOC as soon as practicable after the search.

Effective date and initial applicability: The Act took effect on December 14, 2013. The Act first applies to a person who is placed on probation, parole, or extended supervision on the Act's effective date."

28.　　Affiant found that LOVE began supervision on the 2022CF000601 case in May of 2023 and that he otherwise satisfied the requirements for a search under Act 79. Based on this, and the investigation described in this affidavit, the common areas to which LOVE has access were subject to search.

29.　　Affiant knows that TFO Esqueda and TFO Conway searched the North West bedroom. Officers located a black Apple iPhone in a black rubber case (**The Device**) on the bed. Affiant called 414-307-0393 and **The Device** began to ring. 414-307-0393 is the number the SOI stated LOVE utilizes to conduct controlled substance transactions.

30.　　Located hanging on the closet door was a black winter jacket that appeared to be the same jacket LOVE was earlier observed wearing. Located in the front right pocket was a black Ruger LCP .380 semi-automatic handgun. Located in the same pocket was a BMO Harris Bank credit card addressed to LOVE. Located inside of the closet in a purse was a black Kel-Tek PMR-30 .22 caliber semi-automatic handgun. Located on a shelf in the closet was a silver and black Taurus, Model G2C 9mm semi-automatic handgun.

31.　　All three handguns recovered were found to have unfired cartridges in the magazine of their respective firearm.

32.　　Case agents believe based on their training and experience that evidence of controlled substance trafficking and/or illegal firearm possession will be located in The

**Device**. Case agents believe that information located in **The Device** will help case agents understand the full scope of the DTO that would include customers and suppliers.

33. Affiant knows from training and experience that persons who engage in ongoing criminal drug trafficking and/or the unlawful possession of firearms utilize cellular devices to further their activities. I know that drug traffickers utilize cellular devices to maintain contact with other affiliates and store information relating to drug trafficking. I know that evidence of drug trafficking can be held on the photographs, videos, call logs, text messages, contact lists, and otherwise stored digital information. I know that drug traffickers often record images and/or videos depicting narcotic evidence, maintain contact with others regarding drug trafficking through cellular devices which would be recorded in call logs and text messages, as well as maintain a contact list of affiliates within their cellular devices for personal reference and use. I know that additional evidence of drug trafficking would be stored within other digital stored memory of the cellular devices, and that law enforcement investigators could retrieve the electronically stored evidence if accessible. I also know that persons who unlawfully possess firearms (including in furtherance of drug trafficking) frequently maintain evidence related to their use of said firearms on their cellular devices to include photographs/videos of them in possession of the firearms and text messages or other communications with others concerning the acquisition of the firearms.

34. **The Device** is currently in the lawful possession of the HIDTA.

35. The **Device** is currently in storage at 11548 West Theodore Trecker Way, West Allis, Wisconsin, 53214. In my training and experience, I know that the **Device** has

been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Device** first came into the possession of HIDTA.

36.     Based on their training, experience, and knowledge of this investigation, case agents believe that contained within the **Device** is evidence of drug trafficking and illegal firearm possession.

<u>**TECHNICAL TERMS**</u>

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless

telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such

navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

   f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every

14

computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38. Based on my training, experience, and research, I know that the **Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39. Based on my knowledge, training, and experience, I know that electronic devices—like the **Device**—can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

40. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that

establishes how the **Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Device** because:

      a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41.      *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42.      *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

43.      I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Device** described in Attachment A to seek the items described in Attachment B.

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

The property to be searched is black Apple iPhone in a black rubber case, phone number of 414-307-0393, hereinafter "the **Device**," which is currently located at North Central High Intensity Drug Trafficking Area, 11548 West Theodore Tracker Way, West Allis, Wisconsin, 53214.

This warrant authorizes the forensic examination of the **Device** for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.      All records on **the Device** described in Attachment A that relate to violations of Title 21, United States Code, sections 841(a)(1) and 843(b) and Title 18, United States Code, section 922(g) and involve Jeffrey LOVE, since January 1, 2024, including, but not limited to:

   a.  preparatory steps taken in furtherance of these crimes;

   b.  lists of drug customers and related identifying information;

   c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d.  any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   e.  any information recording schedule or travel;

   f.  all bank records, checks, credit card bills, account information, and other financial records;

   g.  Photographs and/or video depicting possession of drugs, firearms, assets, or other activities related to drug trafficking or money laundering;

   h.  Any evidence related to either the ownership, purchase, or possession of drugs, firearms, and assets;

   i.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

   j.  All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of **the Device**;

2.      Evidence of user attribution showing who used or owned the **Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.